IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RONNIE WIMBUSH, #360-137                     *

Plaintiff                                              *

v                                                          *        Civil Action No. JKB-16-178

DAWN HAWK, RN                                *
TARA COTTRELL, LPN
WEXFORD HEALTH SOURCES, INC.     *

Defendants                                           *
                                                            ***

## MEMORANDUM

Plaintiff Ronnie Wimbush, a Maryland prisoner incarcerated at North Branch Correctional Institution ("NBCI"), seeks money damages from Tara Cottrell, a licensed practical nurse working at the prison, alleging she poisoned him on three occasions[1] by forcing him to drink non-bottled water when taking medication.[2]  He also alleges that he is refused medication if he insists on taking the medication by drinking bottled water he has purchased at the commissary, and that he has been denied treatment for the effects of poisoning, which have caused digestive problems and left him unable to eat and sleep.  (ECF No. 1, p. 6).[3]  Wimbush seeks compensatory and punitive damages and injunctive relief mandating Cottrell lose her nursing license and that criminal charges be brought against her.  (Id., p. 7).  Defendant Cottrell has filed a Motion for Summary Judgment (ECF No. 16) which is unopposed.[4]

---

[1] Wimbush indicates the poisoning occurred on November 11, 2015, January 2, 2016, and January 3, 2016.  (ECF No. 1, pp. 3-4).

[2] Defendants Wexford Health Sources, Inc. and Nurse Hawk were dismissed on February 5, 2016.  (ECF No. 10).

[3] This Memorandum references pagination reflected by the court's electronic filing system.

[4] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Clerk of Court on May 4, 2016

The court finds a hearing in this matter unnecessary.  *See* Local Rule 105.6 (D. Md. 2016).  For the reasons stated below, defendant Cottrell's motion for summary judgment will be granted.

## Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)).  The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility."  *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the court also must abide by the "affirmative obligation of the trial

---

informed Wimbush that Cottrell had filed a dispositive motion; that Wimbush had seventeen days in which to file written opposition to the motion; and that if Wimbush failed to respond, summary judgment could be entered against him without further notice.  (ECF No. 18).  Wimbush requested and was granted additional time (ECF Nos. 19 and 20), but has chosen not to respond.

judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*,

346 F.3d

at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)) (internal quotation marks

omitted) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). This standard of review

will be used to assess the facts pertinent to this case.

### Background

Wimbush, age 51, suffers from chronic pain and Hepatitis C, and has been diagnosed

with a personality disorder.[5]   (ECF No. 16-3, p. 2, ¶ 4, Affidavit of Robustiano Barrera, M.D.).[6]

According to Dr. Barrera, Wimbush's mental history has manifested in misbehavior, including

manipulation, exaggeration, feigning illness, threatening medical staff, and malingering for

personal gain.  (*Id.*, p. 2, ¶ 5).  His self-reported pre-incarceration history includes drug abuse,

including the use of cocaine and heroin.  (*See Wimbush v. Matera,* Civil Action No. SAG-11-

1916 (D. Md.), ECF No. 120-3, pp. 11-12).

Because he was known to manipulate medical personnel to obtain certain drugs (*id.,* ECF

No. 120-5, pp. 11-12, 27-28), a "crush and float" order was issued to ensure Wimbush's

compliance with the taking of several of his medications, including Ultram[7] and Neurontin.[8]

(ECF No. 16-3, p. 2, ¶ 6).  Medication is crushed into powder and covered with water, then

---

[5] A personality disorder is a type of mental disorder in which one has a rigid and unhealthy pattern of thinking, functioning, and behaving. A person with a personality disorder has trouble perceiving and relating to situations and to people. This causes significant problems and limitations in relationships, social encounters, work, and school.  *See* http://www.mayoclinic.org/diseasas-conditions/personalitv-disorder.

[6] Barrera is the Medical Director at the Cumberland, Maryland, prisons, including NBCI.  (ECF No. 16-3, p. 1, ¶ 1, Barerra Aff.).

[7] Ultram is a narcotic-like pain reliever.  *See* https://www.drugs.com/ultram.html.

[8] Neurontin (gabapentin) is an anti-epileptic medication also used to treat some types of nerve pain.  *See* https://www.drugs.com/neurontin.html.

provided to the prisoner.  Both Ultram and Neurontin may be administered in this fashion without affecting their efficacy.  (*Id.*).

Wimbush complains that Cottrell first provided him with poisoned water to take medication on November 11, 2015 (ECF No. 1, p. 3).  Cottrell, however, did not begin working at NBCI until November 12, 2015.  (ECF No. 16-4, p. 1, ¶ 4, Affidavit of Tara Cottrell). Wimbush further alleges Cottrell provided poisoned water on two other occasions, January 2 and 3, 2016.  (ECF No. 1, p. 4).  Cottrell avers that medical administration records show that between November 12, 2015, when Cottrell began working at NBCI, and January 15, 2016, when Wimbush filed his complaint, Cottrell administered crushed and floated Ultram and Neurontin to Wimbush ten times, but not on the dates on which Wimbush complains.  (ECF No. 16-4, p. 2, ¶ 6; ECF No. 17-2, pp. 4-7).  These records show that Wimbush refused his Neurontin prescription from November 1, 2015, through November 16, 2015.  (*Id.*).

NBCI prisoners receive medications in their cells.  Cottrell and other NBCI nurses use a cart to pass out medications by tier and cell assignment.  (ECF 16-4, p. 2, ¶¶ 7-8).  The carts contain the medications to be distributed, a pitcher full of water, and small paper cups.  (*Id.*).  A cup of ordinary tap water is poured from the pitcher into a cup for each prisoner to use to consume his medication.  (*Id.*, ¶¶ 8-9).  Cottrell has attempted to reassure Wimbush that the water is safe, but Wimbush has threatened to kill her family.  Cottrell reported the threat, and Wimbush wrote a grievance stating Cottrell threatened his mother.  (*Id.*, p. 3, ¶¶ 11-13). Cottrell denies giving Wimbush toxic or contaminated water.  (*Id.*, ¶ 14).

Wimbush spoke with and/or was treated by NBCI medical personnel 18 times between mid-November, 2015, and the January 15, 2016, filing of this lawsuit.  During these contacts, he attempted to alter the amount of water to be consumed with his medication on one occasion

(ECF No. 17-1, pp. 1-2), and reported being poisoned by the water on January 3, 8, and 10, 2016. (ECF No. 17-1, pp. 40, 42-45).   At his February 10, 2016, session with Licensed Clinical Professional Counselor Lauren Beitzel, Wimbush stated his "disapproval of the crush and float medication process for his Neurontin" and his belief that Cottrell was using contaminated water to prepare his medication.  (ECF No. 17-1, p. 58).  Beitzel noted Wimbush was in no apparent distress.   (*Id.*).   Since that time, Wimbush has raised no further complaints regarding the allegedly poisoned water.   (ECF No. 16-3, p. 7, ¶ 29).

### Analysis

Wimbush's complaint is best construed as a claim that Cottrell failed to protect him from harm by forcing him to take necessary medications using contaminated water.   In essence, Wimbush is alleging that by forcing him to choose between going without medication or taking medication using the "crush and float" method using tap water, Cottrell demonstrated "deliberate indifference to serious medical needs" resulting in "the 'unnecessary and wanton infliction of pain,'...proscribed by the Eighth Amendment." *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To show deliberate indifference, Wimbush must establish that Cottrell had actual knowledge or awareness of an obvious risk to a serious medical need and failed to take steps to abate that risk. *See generally, Farmer v. Brennan*, 511 U.S. 825 (1994); *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101 (4th Cir. 1995).

None of Wimbush's fellow prisoners who also receive medications from Cottrell have complained of poisoned or contaminated water.  (ECF No. 16-4, p. 3, ¶ 10).  Cottrell avers the water was simple tap water, and she was following orders to "crush and float" Wimbush's medications.  The court concludes that it is safe to assume that the tap water Cottrell provided posed no obvious risk of harm. To the extent that Wimbush decided to forego taking medication

for several weeks because he objected to the manner in which it was delivered (by "crush and float"), that decision is his alone.   Wimbush has not demonstrated a violation of the Eighth Amendment with regard to his health care, nor has he shown that defendant Cottrell acted improperly when supervising him to ensure the proper intake of his medication.   Accordingly, defendant Cottrell's dispositive motion shall be granted, by separate order to follow.

September 19, 2016                              _____/s/_____
                                               James K. Bredar
                                               United States District Judge